JOHN G. CHAPMAN, ADMINISTRATOR OF SAMUEL CHAPMAN, *vs.* ELIZABETH G. DAVIS, EXECUTRIX OF THOMAS A. DAVIS.—*December* 1846.

A defendant who appears in a cause, and after a general imparlance pleads the general issue to the plaintiff's declaration, cannot, because of a leave granted to the plaintiff to amend, plead in abatement a variance between the writ and the second nar.

The court will not receive a plea in abatement, grounded on such a variance, to an amended declaration filed after a general imparlance.

When a party has, by the character of his pleadings, waived all objections to the capacity of the plaintiff, or any other abateable matter then existing, he cannot be allowed to resume the objection.

A defendant cannot plead in abatement, a variance between the writ and count, without demanding *oyer* of the writ.

The writ, without oyer, is no part of the pleadings, or even the proceedings in the cause.

Where a plaintiff sues out a writ as administrator, and declares as executor, it is a variance which a defendant may plead in abatement, if he presents the objection in due time, and in a proper mode.

In cases where the plaintiff can only maintain an action in his individual capacity, the addition of the word, administrator, may be treated as superfluous.

But where the plaintiff can maintain his action either in his personal or representative character, he is bound by his election.

Where affidavits filed in a cause, show that a plea in abatement was tendered by a defendant, immediately upon the declaration being amended, and the rule to plead laid, and to which plea a *ne recipiatur* was directed by the court, it was the duty of the clerk to have entered these proceedings upon the record, and having omitted to do so, the county court below, after appeal, upon transmission of the record to them, under a writ of diminution, may order the record to be corrected, and certified anew to this court.

Where the plaintiff sued out a writ as administratrix, and declared as executrix in assumpsit, under the general issue plea she may offer in evidence her letters testamentary, to show the character in which she sues.

Where *C* and *D* entered into a single bill, of which each paid one half, in an action by the executrix of *D* against the administratrix of *G*, on the ground that *C* was the principal debtor, and *D* only the surety, and for the purpose of recovering the whole debt from *C's* estate, it is competent for *C* to prove, that he and *D* were members of the vestry of a church, on account of which the single bill was originally signed, to borrow money, and continued members thereof for a series of years; and that the fact of membership, and its continuance, as between *C* and *D*, might be proved by the acts and conduct of the parties, of which, parol proof was competent evidence.

An instrument of writing, reciting: "The vestry met agreeably to notice. Present *C*" and others, (not mentioning *D* as present,) "who resolved, that in order to finish the church, the vestry, or those of them who will consent to the plan, will agree to complete said church on their own responsibility," &c.—And to which was appended the following agreement: "We whose names are hereunto subscribed, do agree to exonerate *H* and *M* from any responsibility arising under the foregoing resolutions,"—signed by *C*, and *D*, and others,—is not evidence, *per se*, that *D*, who so signed, was a member of the vestry of said church at the time of the date thereof.

APPEAL from *Charles* county court.

This was an action of *assumpsit*, brought on the 12th March 1839, by the appellee, as administratrix of all and singular, the goods, &c., which were of *Thomas A. Davis*, late, &c., against the appellant. The writ was returnable to the 3rd Monday of March 1839, and returned *cepi*. At that term the

defendant appeared, and laid the usual rule on the plaintiff to declare. Upon the prayer of the plaintiff to imparle, the cause was continued until August term 1839, when the plaintiff declared upon the common counts, &c., *describing herself in the declaration as executrix.*

The defendant pleaded *non assumpsit,* on which the issue was joined.

The cause was then regularly continued from term to term, until August term 1841, when the plaintiff prayed leave to amend her declaration, which was granted, and the cause again continued. At March term 1842, the leave to amend was withdrawn.

The defendant then pleaded as follows:

"And the said *John G. Chapman,* administrator as aforesaid, defends the wrong and injury, when, &c., and prays judgment of the writ aforesaid, because he saith, that there is a variance between the writ aforesaid, and the declaration of the said plaintiff against the said defendant, founded on the writ aforesaid, in this, to wit, that in and by the said writ, the said plaintiff is called by the name of *Elizabeth G. Davis,* administratrix of all and singular, the goods and chattels, rights and credits, which were of *Thomas A. Davis,* late of *Charles* county, deceased, and in the declaration aforesaid, founded on the said writ, by the name and addition of *Elizabeth G. Davis,* executrix of the last will and testament of *Thomas A. Davis,* late of *Charles* county, deceased. Wherefore, inasmuch as there is such variance between the writ aforesaid, and the declaration of the said plaintiff thereon, founded in the name and addition of the said plaintiff, and because there is manifest variance between the original writ aforesaid, and the declaration of the said plaintiff thereon founded, he, the said defendant, prays judgment of the said writ and declaration, and that the same be quashed," &c.

The plaintiff then prayed, that the said plea be not received, but that the same be stricken out; which prayer was granted, upon the ground that the defendant having failed to plead said plea in abatement heretofore in proper time, and having pleaded the general issue plea, it was now too late for said plea in

abatement to be filed, and that the filing of said plea had been waived in legal contemplation, by the filing of said general issue plea. The defendant excepted.

At the trial of the cause, and immediately after the court had given the opinion expressed in the first bill of exceptions, which is made a part of this bill of exceptions, the defendant tendered to the court a general demurrer to the plaintiff's declaration, but the court refused to permit said general demurrer to be filed, until the defendant had first obtained leave to withdraw the plea of the general issue, filed at the August term 1839, of this court, the defendant, by his counsel, contending that there was no necessity for said leave, as the leave to amend the declaration, granted to the plaintiff at August term 1841, had the effect to withdraw said plea, and the issue thereon joined from the proceedings in the cause. To this opinion of the court, and their refusal to accept the general demurrer, so as aforesaid tendered by the defendant's counsel, the defendant again excepted.

From these decisions, which constitute the 1st and 2nd exceptions, the defendants appealed, and then withdrew his plea of *non assumpsit*, and demurred generally to the plaintiff's declaration; the county court sustained the demurrer.

The plaintiff then moved for leave to amend her declaration, which was granted. She declared anew for money paid and laid out by her, as executrix, for the defendant, as administrator, at his special instance and request, and made profert of her letters testamentary.

At this stage of the cause, the defendant again tendered his plea of abatement, grounded upon the variance aforesaid, which the county court again refused to receive. The issue was then joined on the plea of *non assumpsit*.

The defendant also pleaded limitations to the amended nar. The plaintiff demurred generally, and the court sustained that plea also, on which issue was then joined.

The jury found a verdict for the plaintiff.

When the record was first filed in this court, the *second* tender of the plea in abatement did not appear, neither did the refusal of the court to receive it. It had not been entered on

the docket of the court.  Upon diminution suggested by the defendant, the record was transmitted for correction, and upon motion, and proof to that court of the omission of the clerk, an amendment was ordered correspondent with the facts.  The record returned here under the diminution, showed the correction.

3RD EXCEPTION.  At the trial of this cause, the plaintiff to maintain the issues on her part joined, produced and offered to read in evidence to the jury the letters testamentary, granted to her by the orphans court of *Charles* county, as executrix of the last will and testament of the said *Thomas A. Davis,* deceased.

The defendant objected to the admissibility of said evidence, and insisted, that it was incumbent on the plaintiff, to enable her to recover in this action, to produce letters of administration on the personal estate of the said *Thomas A. Davis;* and prayed the court to instruct the jury, that they must find for the defendant, unless said letters of administration were produced, and that the production of letters testamentary to the plaintiff on the estate of said *Thomas A. Davis,* was not sufficient to entitle the plaintiff to a verdict.  The court, (STEPHEN, C. J., and KEY, A. J.,) refused to grant said prayer, but were of opinion, and so instructed the jury, that the letters testamentary, so as aforesaid produced and offered to be read in evidence to the jury, were legally admissible to show the character in which the plaintiff sues in the present action; to which opinion of the court, and their instruction, the defendant excepted.

4TH EXCEPTION.  At the trial of this cause, the plaintiff to support the issue joined on her part, offered in evidence to the jury the following single bill, dated the — day of — 1822, and the following record of a judgment founded thereon :

"*Joseph J. Wills* and *William Thompson,* administrators of *John B. Wills, vs. Elizabeth G. Davis,* executrix of *Thomas A. Davis.  Charles* county court, March term, 1830.  Debt.  Judgment signed the 30th day of March 1830, for $1469.08 debt, and $2000 damages and costs.  The damages to be released, &c.    Cost $8.18⅓

Test,      JOHN BARNES, Clerk."

And then proved by *John B. Wills*, a competent witness, that in 1816, 1817, or 1818, the witness could not say which, *Samuel Chapman*, the defendant's intestate, applied to *John B. Wills, Sr.*, the father of witness, for a loan of $1200, which he, the said *Chapman*, stated at the time to *John B. Wills, Sr.*, he wanted to borrow for the use of the vestry of *Port Tobacco* church, and that he, *Chapman*, could give him an order on the vestry of said church; the father of witness replied, that he would lend him the money, but on a suggestion from the witness, that he had better not have to do with so many persons, said that he would lend him, *Chapman*, the money, but would have nothing to do with the vestry. *Chapman* then offered to give him security, and on his engagement to do so, the said contract of loan was consummated, and the money on a subsequent day paid to *Chapman*, and a note was drawn by the said *Chapman*, with a certain *William Morris*, as security. This note remained so for some time, until the year 1822, when the said *John B. Wills, Sr.*, the obligee, required that the same should be renewed, or some other note substituted in the place of it; the witness was under the impression, that his father's motive in so requiring, was that he might include the interest due on said note in a new note; that accordingly the said *Chapman* called on witness, and asked him if he would become his surety, when witness replied, that he had better call on *Thomas A. Davis*, that he, the witness, did not wish to become surety for a debt due to his father. A short time after this, witness saw *Chapman*, and asked him whether he got *Davis* as his surety on the note or not, and *Chapman* replied he had. The plaintiff also proved by *William Morris*, a competent witness, that he was the said *Chapman's* security on the first note. The plaintiff also proved by *William Thompson*, a competent witness, that the plaintiff paid to him, as the administrator of *John B. Wills, Sr.*, the sum of $1400.87, being the one-half of the judgment hereinbefore mentioned, for which he gave her a receipt; the plaintiff here rested her case.

The defendant then proved to the jury, by the said *William Thompson*, that the one-half of said judgment had been paid

to him by the defendant, and the other half, being the sum of $1400.87, by the said plaintiff; and then the defendant, for the purpose of proving to the jury, that on or about the 29th of July 1815, the said *Samuel Chapman* and *Thomas A. Davis* were members of the vestry of *Port Tobacco* church, and that they continued members of said vestry from the 29th of July 1815, to the time of their signing the note or single bill, in 1822, to the said *John B. Wills, Sr.*, so as aforesaid given in evidence to the jury by the plaintiff, offered parol proof, that the said *Davis* and *Chapman* were members of the said vestry in 1815, and remained so until the date of the said single bill, signed in 1822, so as aforesaid given in evidence to the plaintiff, and after; but the plaintiff, by her counsel, objected to the admissibility of said parol evidence, and insisted before the court, that the said facts could only be proved by a production of the record of the vestry, making said appointments of vestrymen, or on proof of their loss.

The plaintiff then proved by said witness, that in 1815, before and after *John Edelen*, late deceased, was the register of said church; and that there was an old record of said church kept by the said register; that sometimes the proceedings of said vestry were written on separate pieces of paper; that he does not know whether the appointment of vestrymen of said church was entered on said record, or what proceedings were entered thereon; that he, the witness, was not the register, and did not keep the said record: he also proved, that *J. C. Layman* was the register after the said *John Edelen*, and that *A. Bateman* was register after *Mr. Layman* was, and is register of said church. And the court being of that opinion, rejected the said parol evidence, and refused to suffer it to go to the jury; to which opinion of the court, and on their refusal to suffer said parol evidence to go to the jury, the defendant excepted.

The defendant then, for the purpose of letting in said parol evidence, proved to the jury, by the testimony of *Walter Mitchell*, who administered on the estate of *John Edelen*, in conjunction with *Eleanor H. Edelen*, the widow of said *John*, and which said *John Edelen*, it was admitted, was the register

of said vestry in 1815; that no record or other papers relating to the church or vestry of said *Port Tobacco* church, were found by him among the papers of his said intestate, but he had made no search for that purpose. And also proved by *Aquilla Bateman,* the present register of said vestry of the said church, who proved, that he had been and was register of the said vestry since 1826, and that he had made search and inquiries, but never of the register who preceded him, or their administrators, and cannot find, and never has seen or found any record of the proceedings of said vestry in 1815;—but has inquired of some of the vestry since he was register,—or any other record of the proceedings of said vestry, prior to the 12th of April 1819. The plaintiff objected to the admissibility of the testimony of the said *Mitchell* and *Bateman,* for the purposes aforesaid, of letting in the parol proof, and the court sustained the said objection by plaintiff's counsel, and refused to permit the said parol testimony, or any part of it, to go to the jury aforesaid; to which opinion of the court, and to their refusal as aforesaid, to permit said evidence to go to the jury, for the purposes aforesaid, the defendant excepted.

The defendant then offered in evidence to the court the following original paper, having first proved the handwriting of both the said *Davis* and *Chapman* thereto :

"Saturday, July 29th, 1815. The vestry met agreeably to notice. Present, the *Rev. Mr. Weems, Samuel Hanson, Sr., Samuel Chapman, William Vincent, Horatio Clagett, John Matthews, John T. Stoddert,* and *Henry H. Chapman,* who resolved, that in order to finish the church, the vestry, or those of them who will consent to the plan, will agree to complete the said church on their own responsibility, and in order to reimburse them in the necessary expenditure thereof, they do further resolve, that when the same shall be completed, the pews shall be sold to the highest bidder, without restriction on the purchaser as to the number of pews he may purchase; and also, that any benefit arising from the scheme of a lottery in favor of said church, shall exclusively vest in favor of those persons who may undertake to build the said church.

"Resolved further, that any money, donation or subscription, or that may hereafter be subscribed, shall be payable to the persons who may undertake to build said church, it being understood that any balance due from the vestry shall be first paid out of the money already subscribed and not collected, or collected and not paid over to the vestry.

"Resolved, that to carry into effect the within resolutions, *Messrs. H. H. Chapman, John T. Stoddert,* are appointed our agents, for the purpose of managing the affairs of our lottery, with power to take such steps as to them may appear expedient to the final adjustment of the same, and that *H. H. Chapman* and *Samuel Chapman* shall negotiate any loan in the manner to them seeming best, which the vestry pledge themselves to repay on such terms as they may contract for the same."

"We whose names are hereunto subscribed, do agree to exonerate *Samuel Hanson, Sen'r, Esq.,* and *John Matthews, Esq.,* from any responsibility arising from the aforegoing resolutions.

*John Weems, H. H. Chapman, Samuel Chapman, William Vincent, J. T. Stoddert, Horatio Clagett, Thomas A. Davis.*

Resolved, that *Samuel Chapman, Horatio Clagett,* and *John T. Stoddert,* be a building committee, with power to contract for workmen, materials, and for the purpose of furnishing the church."

For the purpose of proving that the said *Davis* and *Chapman* were members of the said vestry, at the time of the date hereof; but the court were of opinion that the said paper, so as aforesaid offered in evidence, was no evidence that *Davis,* whose name is signed, was a member of the vestry aforesaid at the time of the date thereof, and refused to suffer the same to go to the jury; to which opinion of the court, and their refusal to permit said paper to go to the jury, for the purpose aforesaid, the defendant excepted.

The plaintiff took an exception below, upon which this court did not act.

The defendant appealed.

Chapman, adm'r, *vs.* Davis, exc'x.—1846.

The cause was argued before Archer, C. J., Dorsey and Martin, J.

By T. F. Bowie and Alexander for the appellants, and By Causin and McMahon for the appellees.

Martin, J., delivered the opinion of this court.

The principal question presented for the examination of the court in this case, is that which respects the validity of the plea in abatement, offered by the defendant to the amended declaration of the appellee, at the March term of *Charles* county court, 1842. And it is necessary to recur to the pleadings, for the purpose of understanding what was the predicament of the defendant below at the time he exhibited this plea in abatement.

It appears that the writ was issued on the 12th of March 1839. At the August term of the court in the same year, the plaintiff filed her declaration, to which the defendant pleaded *non assumpsit*. The cause was continued, under a general imparlance, until the August term 1841, when leave was obtained by the plaintiff to amend her declaration. This leave was not exercised, and was withdrawn at the March term 1842. At this term, the defendant filed his first plea in abatement, which was rejected by the court.

At the same term, the defendant tendered a demurrer to the declaration, but which the court refused to receive, unless the general issue was withdrawn. This plea was accordingly withdrawn, and the demurrer renewed and sustained. The plaintiff then, upon leave, amended her declaration, and placed the defendant under a rule to plead. At this point of time, the defendant tendered to the court a plea in abatement, similar to the one which he had before exhibited, and to which the court again entered a *ne recipiatur*. The plea alleges, as matter in abatement, a variance between the writ and declaration, in this respect: That the plaintiff sued out her writ as administratrix of *Thomas A. Davis*, and has declared as his executrix.

In this condition of the pleadings, the counsel for the appellee have contended, that this plea in abatement came too late, and that the county court committed therefore no error in re-

jecting it.   This objection to the plea is, we think, properly taken, and must be sustained.

In *Chamberlin against Hite*, 5 *Watts*, 374, the court say: "A plea in abatement cannot be put in after a general imparlance, and if the defendant wish to preserve his right to such plea, he must vary his form of prayer, by making it with the reservation of his right, and asking a special imparlance, which must be entered on the record.   Nor can it be pleaded after a plea in bar, and if a plea in abatement is put in after a plea in bar, the plaintiff is not bound to reply to it.   It ought to be pleaded within four days after the declaration has been delivered."

In *Wilson against Hamilton*, 4 *Sarg. & Raw.*, 239, it is declared, that a plea in abatement can never be pleaded after a plea in bar, unless the matter has arisen since the plea in bar, in which case it may, provided it be done the first opportunity that is presented, for a plea in bar waives only matter in abatement, then existing.   1 *John. Cas.*, 101.

Passages from these cases have been selected, as containing a clear and distinct statement of the acknowledged principle, that when the party has, by the character of his pleading, waived all objections to the capacity of the plaintiff, or any other abateable matter, then existing, he cannot be allowed to resume the objection.   As the variance which the defendant has presented as pleadable in abatement, existed equally between the writ and original declaration, and the writ and the amended declaration, the amendment of the nar, and the rule to plead anew, could not in this respect change the rights of the parties.   The matter relied on in abatement existed at the period when the plea in bar was filed, and although the leave granted to plead *de novo*, gives to the defendant the right to plead any plea to the action which he may select, it does not confer the right to raise dilatory objections, of which the party was aware when he exhibited his plea in bar, and which he had thus surrendered.

The objection next taken to the validity of this plea, that it was pleaded without demanding oyer of the writ, is equally fatal.   This was the established practice in the *English* courts,

and the right to plead in abatement, a variance between the writ and count, was therefore practically abolished, when *Lord Mansfield*, in the case of *Boats against Edwards*, in 1779, announced to the bar, that the practice, for the defendants to pray oyer of the original, which is so much used for delay, was not warranted by any principle of justice, and ought not to exist.

In *Holt against Finch*, 1 *Wil.*, 394, the court say: "Formerly, when the whole original writ was spread in the same roll with the count, if a variance appeared between the writ and count, the defendant might take advantage thereof, either by motion in arrest of judgment, writ of error, plea in abatement, or demurrer. But afterwards it was determined, that if the defendant will take advantage of a variance between the writ and count, he must demand oyer of the writ, and shew it to the court."

This practice appears to have been adopted in several of the *American* courts, where the first process is, as in *Maryland*, a *capias ad respondendum*. In the case of the *Bank of New Brunswick against Arrowsmith*, 4 *Hals.*, 284, the Chief Justice, after having examined the learning on this branch of the law, says: "From the view which has been taken of the practice in the court of *King's Bench*, to which the proceedings of this court have most nearly approached, and to which we have been accustomed to resort for precedent, when regulations of our own are wanting, it appears that at, and prior to the year 1776, oyer of the writ was constantly granted; and I am not aware that in this court the practice has since been abrogated or denied. The defendant may therefore avail himself of a variance between the writ and declaration, either by oyer and plea, as has been done in the present case, or by a motion to set aside the proceedings for irregularity."

In *Slocum against Slocum*, 8 *Watts*, 371, the court maintain the proposition, "that a variance between the writ and the declaration, could only be taken advantage of by craving and obtaining oyer of the writ, and then pleading the variance in abatement." The same doctrine is distinctly announced in *Chirac against Reinecker*, 11 *Wheat.*, 302, where the Supreme

23    v.4

Court declare, that if in any case a variance between the writ and declaration can be taken advantage of by the defendant, it is an established rule, that it cannot be done except upon oyer of the original writ, granted in some proper stage of the cause.

It is certainly true, that in this State the writ is in court, and forms a part of the record, and bears in this respect no analogy to the practice of the *English* courts. But it is too narrow a view of the subject to suppose, that in demanding oyer of the writ, the only purpose is to place it on the rolls of the court, and to make it a part of the record. The writ, it has been determined is, without oyer, no part of the pleadings, or even the proceedings in the cause. And the object of craving and obtaining oyer of the writ may well be, to bring it to the view of the court, by making it a part of the pleadings, and thus putting the defendant in a situation to plead any variance that may exist between the writ and declaration, in abatement, or to file, according to some of the cases, a special demurrer. Although we consider, that the variance in this case between the writ and count, was a matter which the defendant could have pleaded in abatement, if he had presented the objection in due time, and in a properly constructed plea, the court below could not do otherwise than reject the plea, under the circumstances in which it was exhibited.

If this was a case in which the plaintiff could only have maintained an action in her individual capacity, the addition of the word "administratrix," might have been treated as a superfluous description. This is the language of the court in *Sasscer against Walker's Ex'ts*, 5 *G. & J.*, 107. The Chief Justice says, "if the appeal bond, on which the suit was brought, was a contract on which the plaintiffs could sustain an action only in their individual, and not in their representative capacity, then the addition of the word executors, in the writ, might be construed and treated as a superfluous description, and not irregular, the demand being the same." But the case just referred to establishes the proposition, that upon the cause of action now under consideration, the plaintiff could have maintained an action, either in her personal or representative cha-

racter, and having sued in the latter capacity, she was bound, we think, to sustain it. The result is, that if oyer of the writ had been prayed and granted, the pleadings would have presented a variance, of which the defendant could, at the proper time have availed himself, by plea in abatement.

It is perceived, from the fact of the court having addressed itself to this plea in abatement, that it is regarded as properly and legally forming a part of the record. The affidavits having shown, that a plea in abatement was tendered by the defendant below, immediately upon the declaration being amended, and a rule to plead laid, and that to this plea a *ne recipiatur* was directed by the court, it was the duty of the clerk to have entered these proceedings on the record of the court, and having omitted to do so, the record was properly corrected. While we are of opinion, therefore, that the court below, in directing an amendment of the record, in accordance with the fact, committed no error, we desire to be understood as expressing no opinion on the question, whether an order of this kind can be the subject of appeal?

The first and second exceptions have been abandoned.

It appears from the question presented by the *third* bill of exceptions, that after issue was joined, the plaintiff produced, and offered to read in evidence to the jury, the letters testamentary, granted to her by the orphans court of *Charles* county, as executrix of the will of *Thomas A. Davis.* As the issue was joined on the count, we can perceive no just objection to the admissibility of this testimony. The plaintiff declared as executrix, and it was certainly competent to show, by the testamentary letters, that she was entitled to the character she had assumed. We concur, therefore, with the court below in this exception.

The question presented by the *fourth* exception, relates to the admissibility of the parol evidence offered by the defendant, to prove that *Samuel Chapman* and *Thomas A. Davis,* were members of the vestry of *Port Tobacco* church, about the 29th of July 1815; and that they continued members of the vestry, from the 29th of July 1815, to the time of their signing the note, in 1822, to *John B. Wills.*

The fact proposed to be proved by the defendant, was material to the issue, as the jury might have found from the position of *Davis,* as a member of the vestry, in connection with other testimony, that he intended to sign the note in question, not as the surety of *Chapman,* but as a principal obligor. And the right of the defendant to introduce this testimony, turned on the question, whether it was incumbent on him to produce the record of the vestry as the best evidence, that *Thomas A. Davis* was, at the period referred to, one of its members.

The object of the evidence was, to prove a continuing membership by *Davis,* from 1815 to 1822, and this is a fact which could be established by his acts. The proposition of the defendant must then have been, not to give evidence of the election or appointment of *Mr. Davis* as a member of the vestry, but to show by his acts and conduct, that he continued for the period referred to, to exercise the functions of a member of the vestry, and was a member. In this aspect of the case, we can perceive no objection to the introduction of the testimony.

In *Bevan against Williams,* 3 *Term.,* 635, *note a,* the action was for non-residence, against a clergyman; and the single question was, whether the plaintiff, in order to maintain this action, must prove admission, institution, and induction? The plaintiff did prove several acts done by the defendant, as parson of the parish, such as receiving tithes, serving the church, and acting in other respects as parson. Upon this question *Lord Mansfield* said, "all evidence is according to the matter to which it is applied, and the person against whom it is used. Against a third person there might be some reason for the objection; but as against the man himself, his own letters, receiving tithes, and cutting timber on the glebe, are decisive."

We think, therefore, that it was competent for the defendant to prove, by parol evidence, that *Thomas A. Davis* acted as a member of the vestry, from 1815 to 1822, and that the court below erred in rejecting the testimony offered for this purpose.

The instrument of writing, set out in this bill of exception, as the paper of the 29th of July 1815, was clearly inadmissible. This paper, standing alone, furnished no evidence that *Thomas*

*A. Davis* was a member of the vestry at its date, and the court below committed no error in rejecting it.

As it is apparent from the record, that the appellant, at the trial below, had not the benefit of the fact which he proposed to establish by parol evidence, that *Thomas A. Davis* was a vestryman of the *Port Tobacco* church in 1815, and from thence to 1822, and as we think the court erred in rejecting this testimony, the judgment of the county court will be reversed, and a *procedendo* awarded.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.