(Decided Decemher 3d, 1896).

---

## J. HERMAN SPENCER AND OTHERS *vs.* THOMAS H. PATTEN AND MARTHA J. PATTEN.

*Plea in Abatement—When to be Filed—Pendency of Another Suit—*
*Motion of Ne Recipiatur to Plea—Review of Ruling on Appeal—*
*Trespass on Land Covered by Navigable Water— Fishery—Plea*
*Amounting to General Issue—Demurrer—Harmless Error—Plea*
*Amounting to the General Issue.*

A plea in abatement cannot be filed after a plea in bar, unless the facts relied on to abate the action arose afterwards, and in that case the plea in abatement should allege that the facts arose afterwards.

After a plea in bar was filed, the plaintiffs amended the declaration and the defendants were required to plead to the same. *Held*, that the defendants could not plead to the amended declaration matters which existed at the time of their pleading to the original declaration.

In this case the original suit for trespass was against six defendants, and they pleaded in bar. Afterwards the declaration was amended

by striking out two of the defendants and the remaining four pleaded in abatement, the pending of another action by the same plaintiffs in another Court against two of the defendants and another party for the same cause of action. A motion of *ne recipiatur* to this plea was granted. *Held,* that the pendency of the suit for a joint trespass against these three was as much matter of abatement in the original suit to which all six were parties as in the amended declaration where two of the three and two others were defendants, and that the dilatory plea could not be filed under these circumstances.

The rule requiring dilatory pleas to be filed promptly is important in the administration of justice, not only to save costs and prevent surprise to litigants, but also to save the time of the Court.

The question as to whether a plea in abatement was filed in time or not should be raised by a bill of exception and not by a motion of *ne recipiatur.*

If upon such motion a plea is not received and is not therefore technically a part of the record, it may be questioned whether this Court, upon an appeal from the judgment when there is no bill of exception, can review the ruling of the trial Court.

The declaration alleged that the defendants unlawfully entered the lands of the plaintiffs, and used the same by placing thereon stationary floats for fishing in the waters of the Susquehanna River, adjacent to said lands. The pleas of the defendants set forth that the lands referred to in the declaration were a part of the bed of the said river, covered by navigable waters, where the tide ebbed and flowed, and where there was a common fishery for all citizens, and that the defendants were fishermen, and at the times and places mentioned in the declaration were fishing with seines from floats made of timber temporarily anchored in said navigable waters. Upon demurrers to the pleas, *Held,*

1st. That the *gravamen* of the declaration is that the plaintiffs were deprived of the beneficial use of their lands as a fishery by stationary floats placed there by the defendants, and that if the pleas intended to deny plaintiffs' title, they are bad, because merely amounting to the general issue.

2nd. That if the pleas do not deny that the land was the plaintiffs, they are bad, because it is not an answer to the declaration to say that the defendants were fishing in the ordinary manner.

3rd. That if the plaintiffs had title to the lands covered by water, the defendants had no right to place thereon obstructions which interfered with plaintiffs' lawful use of the same; and the statements in the pleas that the floats were only temporarily anchored for the purpose of fishing, are only denials of the allegation in the declaration of the use of stationary floats, and amount to the general issue.

When a plea amounts to the general issue, it is bad upon demurrer.

A plea for defence on equitable grounds in an action of trespass set forth that the plaintiffs' lands are part of the bed of a navigable river; that the defendants are fishermen and the act complained of was the fishing of said river; that there were no marks showing the boundaries of plaintiffs' lands; that plaintiffs had never objected to the use of floats in fishing over said lands, and had said that they had no greater right to fish at that point than any one else, and that the defendants in fishing there acted in reliance upon these facts. *Held*, that this plea was bad and was liable to demurrer for want of equity.

Where a plea setting up a defence on equitable grounds is bad, a demurrer thereto should be filed, but where such plea is disposed of by the granting of a motion of *ne recipiatur*, the defendant is not injured.

Appeal from the Circuit Court for Howard County. The amended declaration set forth that the defendants in the year eighteen hundred and ninety-three, and prior to the institution of this suit, did unlawfully, wrongfully, willfully and maliciously break and enter certain lands of the plaintiffs, consisting of two adjoining tracts or parcels of land called " Shad Island " and " Addition to Shad Island," situated in Harford County, State of Maryland ; and the defendants did, then and there, unlawfully, wrongfully and maliciously use and occupy the said lands of the plaintiffs by the placing thereon and using stationary floats and other contrivances and devices for fishing in the waters of the Susquehanna River, adjacent to said lands, whereby the plaintiffs were deprived by the defendants of the beneficial use and enjoyment of said lands as a fishery, as well as deprived of other uses to which said lands were suited and profitable to the plaintiffs.    2nd. And for that the said defendants, in the year eighteen hundred and ninety-four, and prior to the institution of this suit, did unlawfully, wrongfully, willfully and maliciously break and enter certain lands of the plaintiffs, consisting of two adjoining tracts or parcels of land, situated in Harford County, State of Maryland, called " Shad Island " and "Addition to Shad Island," and the defendants did, then and there, unlawfully, wrongfully and maliciously use and occupy the said lands of the plaintiffs by the placing thereon and using stationary floats and

other contrivances and devices for fishing in the waters of
the Susquehanna River adjacent to said lands, whereby the
plaintiffs were deprived by the defendants of the beneficial
use and enjoyment of said lands as a fishery, as well as
deprived of other uses to which said lands were suited and
profitable to the plaintiffs.    3rd. And for that the said defend-
ants, in the year eighteen hundred and ninety-five, and prior
to the institution of this suit, did unlawfully, wrongfully, will-
fully and maliciously break and enter certain lands of the
plaintiffs, consisting of two adjoining tracts or parcels of land
called " Shad Island " and "Addition to Shad Island," sit-
uated in Harford County, State of Maryland, and the de-
fendants did, then and there, unlawfully, wrongfully and
maliciously use and occupy the said lands of the plaintiffs
by the placing thereon and using stationary floats and other
contrivances and devices for fishing in the waters of the
Susquehanna River adjacent to said lands, whereby the
plaintiffs were deprived by the defendants of the beneficial
use and enjoyment of said lands as· a fishery, as well as
deprived of other uses to which said lands were suited and
profitable to the plaintiffs.

The defendants' third plea was that they are citizens of
the State of Maryland, and that the plaintiffs' closes men-
tioned in the declaration where the several acts in said
declaration are alleged to have been committed, are a part
of the bed of the Susquehanna River, covered by the nav-
igable waters of said river, where the tide flows and reflows
and where is and was, during said several times in said
declaration stated, a common fishery, wherein all the citi-
zens of said State had during said times and have always
had, and still have, a right to fish ; that the defendants are
fishermen, and during the said several times and places in
said declaration referred to were engaged in fishing their
seines for fish, in the said navigable waters of said river, in
the ordinary and usual manner of fishing seines in said
waters ; which said acts are the several wrongs in said decla-
ration complained of.

The fourth plea, after similar allegations, added that the defendants at the times and places of the several acts complained of in said amended declaration, were engaged in fishing with seines, from floats made of timber and plank there temporarily anchored in said navigable waters, only when engaged in and for the purpose of fishing as aforesaid, by means of an anchor in the usual and ordinary way, which said anchoring of said floats for fishing as aforesaid are the wrongs in said declaration complained of.

The fifth and sixth pleas added that the stationary floats referred to in said declaration were constructed of plank and timber, and were such, together with the contrivances and devices in said declaration mentioned as are commonly and ordinarily used by fishermen in said navigable waters for the purpose of fishing therein ; that the defendants are fishermen, and for a few days during the fishing season in the years 1893, 1894 and 1895, viz., the several times in said declaration mentioned, and at the places in said declaration mentioned were engaged in fishing said navigable waters of said river by means of seines, and in connection therewith, and for the purpose of more conveniently carrying on their said fishing, anchored said floats and said other devices and contrivances there during said few days in each of said years by means of anchors in said navigable waters, in the usual and ordinary way, which said several acts of the defendants are the wrongs in said declaration complained of.

The seventh plea for defence on equitable grounds set forth that the closes, in said declaration mentioned, called "Shad Island" and "Addition to Shad Island," are situate in the bed of the Susquehanna River and covered by the ebb and flow of the tide of said river, and that said river is a public navigable river of the State of Maryland; that the defendants are fishermen and were engaged in fishing in part of each of the years in said declaration mentioned, and the acts complained of were done by them as fishermen, fishing the navigable waters of said river, where said

closes are situated as aforesaid; that there are no monuments or other boundaries in or on the said water covering said closes as aforesaid to *show* where the lines of said closes are located; that the plaintiffs had never objected to floats being fished in the waters of said river, where or about where the floats of the defendants were fished during the time complained of, which was well known to these defendants prior to the year 1893; that the plaintiffs in the year 1887 said they had no other or greater right to fish the waters of said river from floats, where or about where the floats of the defendants were anchored and fished in the years 1893, 1894 and 1895, than any one else; that the defendants prior to the year 1893 had knowledge of the above facts and acted thereon in the commission of the several acts complained of in said declaration.

Demurrers to the third, fourth, fifth and sixth pleas were sustained, and a motion of *ne recipiatur* to the seventh plea was granted. The jury returned a verdict for the plaintiff for $600.

The cause was argued before McSHERRY, C. J., BRYAN FOWLER, ROBERTS, and BOYD, JJ.

*John S. Young* and *J. J. Archer*, for the appellants.

*J. Wesley Falls* and *George Y. Maynadier* (with whom was *Wm. S. Evans* on the brief), for the appellees.

BOYD, J., delivered the opinion of the Court.

The appellees sued the appellants, Philip M. Spencer and Jarrett Spencer, in Harford County, and the case was removed to Howard County. On the 28th day of March, 1896, a jury was sworn in the Circuit Court for the latter county to try the issues joined, and on April 9, 1896, there was a " motion to amend declaration and to strike out the names of Philip M. Spencer and Jarrett Spencer, two of the defendants, from the writ and all subsequent proceedings in this case." The next entry appearing on the very imper-

fect record before us is, " Same day amended declaration filed as follows ; " and a declaration against these appellants · is then set out, which contains three counts, all of which are to the same effect, excepting the trespasses are alleged to have taken place in different years.

A demurrer was filed to the declaration, but it was not pressed in this Court. The defendants filed on the same day, April 9, 1896, a plea in abatement to the amended declaration, which is set out in the record with the following entry just below it : " Motion *ne recipiatur* to said first plea and motion granted." On the same day four pleas in bar, marked second, third, fourth and fifth pleas to the amended declaration, were filed. The second was the general issue plea, and the third, fourth and fifth were demurred to, and the demurrers were sustained. On the 16th day of April, 1896, two other pleas marked the sixth and seventh were filed, and there is an entry in the record, " demurrer to the sixth plea and motion *ne recipiatur* to the seventh plea. Demurrer and motion *ne recipiatur* sustained." On the 17th day of April there was a verdict for the plaintiffs, and after a motion for a new trial was overruled judgment was entered thereon and an appeal taken. The record shows that exceptions had been taken during the trial, but as they are not in the record we are confined in our inquiries to the questions presented by the rulings of the Court below on the pleas.

The first point urged in this Court is in reference to the ruling on the first plea, which was filed in behalf of all the defendants, and alleges that at the time of the issuing of the summons in the case " another suit or action was pending in the Court of Common Pleas of Baltimore City in this State, in which the said plaintiffs in this case are plaintiffs against Joseph E. Spencer and J. Herman, two of the defendants to this suit (and one Jarrett Spencer), on the same causes of action in said amended declaration mentioned and described, and which said suit is pending at this time." There is nothing in the record concerning the action of the

Court as to this plea excepting the entry above mentioned. It was stated in argument that the motion was granted on the ground that the plea was filed too late, and we assume that to be correct. It is well settled that a plea in abatement cannot be pleaded after a plea in bar has been filed, unless the facts relied on to abate the action arise afterwards. If it be conceded, as contended by the appellants, that a plea in bar only waives matter in abatement then existing and of which the party was aware at the time when his plea in bar was filed, this additional qualification cannot aid the appellants, as the plea does not allege that they were not aware of the facts stated when they filed the plea in bar. But it is contended that when the plaintiffs amended their declaration the defendants were required to plead to the amended declaration, and therefore could then file the plea in abatement. The case of *Chapman* v. *Davis*, 4 Gill, 166, is a complete answer to that contention. There a plea in abatement alleging a variance between the writ and declaration was tendered, but the Court refused to receive it, because the defendant had previously filed the general issue plea. Afterwards a demurrer to the declaration was entered and sustained and the plaintiff filed an amended declaration. The defendant again tendered his plea in abatement, but the Court below refused to receive it and the Court of Appeals sustained that ruling. JUDGE MARTIN, in delivering the opinion, said : " As the variance which the defendant has presented as pleadable in abatement existed equally between the writ and original declaration and the writ and the amended declaration, the amendment of the *narr.* and the rule to plead anew could not in this respect change the rights of the parties. The matter relied on in abatement existed at the period when the plea in bar was filed, and although the leave granted to plead *de novo* gives to the defendant the right to plead any plea to the action which he may select, it does not confer the right to raise dilatory objections, of which the party was aware when he exhibited his plea in bar and which he had thus surrendered."

In this case the plea was as applicable in a suit against the six original defendants as it was against the remaining four after the declaration was amended by striking out two. It is said by the appellants that they could not have filed this plea to the original declaration because it was for a trespass committed by the four appellants, jointly with Philip and Jarrett Spencer, whilst now the suit is only against the appellants for a joint trespass committed by them, and therefore a different cause of action from the one in the original declaration. If that reasoning be correct how can it be said, as this plea does, that a suit against Joseph. E. Spencer, J. Herman Spencer and Jarrett Spencer was on the same cause of action as that alleged against these four appellants ? It is stated in the appellants' brief that the evidence showed there were two sets of alleged trespasses—one committed by the appellants *alone* and the other by Philip and Jarrett Spencer, and for that reason the plaintiffs amended by striking out one set of trespasses. If that be correct, it is manifest that a suit for a joint trespass by Joseph, J. Herman and Jarrett Spencer would not abate this suit. It is certainly true that a suit for a joint trespass against those three would have been as much a matter of abatement in the original suit, to which those three and three others were parties, as in the action now prosecuted where two of the three and two others are defendants. The law does not tolerate the interposition of a dilatory plea at such a time and under such circumstances as was attempted here. The record does not show when the original suit was brought, but it does show that the plea was tendered after the case had been removed from Harford to Howard County, and on the twelfth day after the jury was impanelled. The rule requiring dilatory pleas of this character to be filed promptly is an important one in the administration of justice—not only to save costs and prevent surprise to litigants, but to save the time of the Courts from being uselessly occupied and thereby avoid unnecessary expenditures of the public money in paying jurors and other Court expenses.

We have not thought it necessary to discuss the form of this plea. We will only add that we do not think the practice adopted in bringing the question before us is the proper one. The motion *ne recipiatur* is presumbly made before a plea is filed and made part of the record. A better practice would therefore be to present the question by a bill of exceptions. There may be a rule of Court in force which governed the Court below, and if the plea is not received, and therefore not technically a part of the record, it may well be questioned whether this Court is authorized by an appeal such as this to review the ruling of the Court below unless presented by an exception. The general subject is fully discussed in 3 *Ency. of Pl. & Pr.* 392, and following pages, and although the practice in this State may not be in accord with all the authorities cited by the author, the wisdom, if not necessity, of having a bill of exceptions in a question of this kind is made apparent. Certain it is that we must presume the action of the Court below, on a motion of this character was right unless there be something on the record to affirmatively establish the contrary.

The rulings on the third, fourth, fifth and sixth pleas will be considered together. The declaration alleges that the defendants did unlawfully, wrongfully, wilfully and maliciously break and enter the lands of the plaintiffs, and did then and there unlawfully, wrongfully and maliciously use and occupy said lands " by placing thereon and using stationary floats and other contrivances and devices for fishing in the waters of the Susquehanna River adjacent to said lands, whereby the plaintiffs were deprived by the defendants of the beneficial use and enjoyment of said lands as a fishery, as well as deprived of other uses to which said lands were suited and profitable to the plaintiffs."

These pleas are intended to raise the same question. The third, for example, alleges that the plaintiffs' closes are a part of the bed of the Susquehanna River covered by the navigable waters of the river where the tide flows and reflows, where there is a common fishery wherein all citi-

zens of the State have the right to fish. " That the defendants are fishermen, and during the said several times and places in said declaration referred to were engaged in fishing their seines for fish, in the said navigable waters of said river, in the ordinary and usual manner of fishing seines in said waters." That plea cannot be said to be an answer to the declaration, the *gravamen* of which is that the plaintiffs were deprived of the beneficial use and enjoyment of their lands as a fishery by the defendants placing thereon *stationary floats* and other contrivances. If the plea intended to admit, and it does not in terms deny, that the land was the plaintiffs', then it is not an answer to say that the defendants were fishing in the ordinary and usual manner. If it was intended to deny the plaintiffs' title, then it merely amounted to the general issue plea and was therefore bad. The fourth, fifth and sixth were even more objectionable than the third. After repeating in substance the statements in the first part of the third plea, they allege that the floats were only *temporarily* anchored in said navigable waters, which is a mere denial of the declaration which charges they were *stationary* floats. If it be conceded that the plaintiffs' closes mentioned in the declaration are a part of the navigable waters of the Susquehanna River where the tide flows and reflows, and that there was a common fishery there where the public had the right to fish, yet if the plaintiffs had title to the lands the defendants had no right to place thereon obstructions which interfered with the plaintiffs' lawful use and enjoyment of them, and the statements that the floats were only temporarily anchored for the purpose of fishing are mere denials of the allegations in the *narr.* of the use of stationary floats. So, when we get at the pith and material parts of the declaration and these pleas which raise any issue, we find it alleged by the plaintiffs that the defendants used stationary floats and other contrivances that interfered with the use of the property, and denied by the defendants. If, therefore, the pleas answers the declaration at all, they do so in such way as to amount merely to the general issue.

In *Miller* v. *Miller*, 41 Md. 623, the defendant plead in an action of *quare clausum fregit* that he was the true and lawful owner of the land upon which the trespass was alleged to have been committed, and had exclusive possession of the same. This Court held that the plea "amounted to nothing more than a denial of the title of the plaintiffs and was nothing more or less than the general issue plea which was filed with the other pleas," and therefore the demurrer was properly sustained. In *Keedy* v. *Long*, 71 Md. 388, that case was affirmed and it was held that such defect in a plea was one of substance which a general demurrer will reach. We think, therefore, that these pleas were technically defective because they amounted to the general issue and the demurrer presented the question. If that were not so we would hesitate to reverse this judgment for the rulings on these pleas, as it is perfectly clear that the evidence of what is alleged in them could have been introduced under the general issue, to the same effect and advantage as it could have been done under the special pleas. Whilst it is true that that fact does not make a plea bad on demurrer, but the plea must *amount* to the general issue, yet after a case has occupied three weeks at the trial below and all the questions raised or intended to be raised by the pleas could be better presented by prayers, or on the offers of testimony, we assume that such was done, especially when we see from the record that exceptions were reserved and it was stated at the argument, without denial, that the questions raised by the pleas were fully considered during the trial of the case.

The seventh plea is defective. Objection is made to its having been disposed of by a motion *ne recipiatur*. The proper way to raise the question was by a demurrer for want of equity, but as it is so manifestly bad, the defendants were not injured by the method adopted.

Although the question as to what rights the plaintiffs had in the navigable waters of the Susquehanna was argued at length, and with ability, we will not now determine it, as it

is not necessary for the purposes of this case.    There is
nothing in the record to show when or how the title was
vested in them or the exact location of the plaintiffs' land
with reference to the navigable waters.    The Act of 1862,
chapter 129 (Code, Art. 54, secs. 44–46), has made ma-
terial changes in the rights of proprietors of land bounding
on any of the navigable waters of this State, and without
more information than we have in the record it would be
useless to discuss the question, especially when the appeal
must be disposed of on other grounds.    The judgment must
be affirmed.

> *Judgment affirmed with costs to the*
> *appellees.*

(Decided December 3rd, 1896).