## .　WILLIAM KELLER

### *vs.*

## STATE OF MARYLAND.

*Criminal law: penal statutes; indictments; sufficiency.　Police power: health regulations; licensing under-takers; classification.*

If an indictment sets out a statutory offense, in the language of the statute, it is sufficient.　　　　　　　　　p. 679

A demurrer to an indictment, under a statute which is a re-enactment of a law already declared unconstitutional by the Court of Appeals, should be sustained.　　　　p. 680

Under the police power, the State has the right to protect the health of the community by laws regulating the business of undertaking, provided the regulations are fair and just.　p. 684

The provisions of Chapter 160 of the Acts of 1902, requiring that applicants for licenses to act as undertakers, shall qualify by showing their knowledge of undertaking, of sanitation, of the preservation of the dead, and of disinfecting the bodies of deceased persons, apartments, clothing and bedding, bear a sufficient and reasonable relation to the public welfare and the preservation of the public health, and do not constitute a violation of any constitutional right.　　　　　　　p.686

In the exercise of the police power, the Legislature may create different classes (in the regulation of business, etc.,), with burdens and duties varying with the respective classes.　p. 684

The provisions of Chapter 444 of the Acts of 1910, regulating the business of undertaking, and declaring, among other things, that a license should suffice for all members of a co-partnership when issued in the firm name; that assistants and employees of undertakers should pay the same license fee and have the same

business knowledge as the undertakers employing them, and that licenses should be issued to corporations upon application, without charge, was *Held,* of themselves, not to create such arbitrary or unreasonable classifications as to render the Act unconstitutional.                                        p. 683

The nature and extent of the qualifications that a State may impose upon persons engaged in special pursuits depends primarily upon the judgment of the State as to their necessity; if they are appropriate to the calling and profession and attainable by reasonable application, no objection to their validity can be raised.                                        p. 684

Pleas must not be insensible or repugnant, nor ambiguous or doubtful, nor argumentative, nor in the alternative.      p. 690

To an indictment for the violation of Chapter 160 of the Acts of 1902, regulating the business of undertaking, the traverser pleaded a special plea, alleging that he was a skilled embalmer, engaged only in embalming for a licensed undertaker, and that during all the time mentioned in the indictment he had done no other acts, and set out at length in the plea a full recital of what purported to be all the duties and customs in the business of undertaking, and of the business of embalming: *Held,* that such pleas were bad and were demurrable.
                                        p. 690

Such disposition of the case, upon the pleadings, was declared not to be a decision that the statute in question applied in terms to every employee or to all the various employees of an undertaker such as named in the special plea.      p. 691

Where a traverser had been tried and acquitted upon the charge of violating the law regulating the business of undertaking, in regard to one deceased person specially named in the indictment, he can not plead *autrefois acquit* to an indictment for violating the same law in regard to another deceased person specially named.                                        p. 690

*Decided February 25th, 1914.*

Appeal from the Criminal Court of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was submitted to BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Eugene O'Dunne* and *Donald B. Creecy,* filed a brief for the appellant.

*Edgar Allan Poe, the Attorney-General; Wm. F. Broening, the State's Attorney for Baltimore City; Roland R. Marchant, the Deputy State's Attorney for Baltimore City,* and *J. Cookman Boyd,* filed a brief for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The traverser, William Keller, was indicted in the Criminal Court of Baltimore for violating Chapter 160 of the Acts of 1902, entitled An Act to create and establish "the State Board of Undertakers of Maryland," and to prescribe the powers and duties of the said board.

The indictment contained six counts and a demurrer was interposed to each count. The Court below overruled the demurrer as to the first four counts and sustained it as to the fifth and sixth counts.

Subsequently, the traverser filed ten special pleas, and to each plea the State demurred. The demurrer was sustained, and the traverser upon trial pleaded not guilty. He was tried, convicted, and sentenced to pay a fine of ten dollars and costs. From this judgment he has appealed.

The first four counts of the indictment are framed and based upon Chapter 160 of the Acts, and if this Act is a valid exercise of legislative power, the Court below committed no error in overruling the demurrer to these counts, and to the nine pleas.

The offence is clearly and sufficiently set out in the several counts of the indictment, in the language of the Act of 1902, and we find no objection to the sufficiency or validity of the indictment as thus framed, in these four counts.

The fifth and sixth counts are based and founded on Chapter 444 of the Acts of 1910, and it is admitted, that this last named Act is invalid, under the decision of this Court in *State v. Rice,* 115 Md. 317.

It will be seen that Chapter 444 of the Acts of 1910, repealed sec. 8 of Chap. 160 of the Acts of 1902, as amended by Chapter 389 of the Acts of 1904, as amended again by Chapter 496 of the Acts of 1908, and re-enacted the same with amendments.

In *State v. Rice, supra,* we held that Chapter 496 of the Acts of 1908, and Chapter 389, of the Acts of 1904, amending secs. 7 and 8, of the Acts of 1902, Chapter 160, were unconstitutional and all the amendments to both sections 7 and 8 of the original Act were stricken down.

As it is conceded that Chapter 444 of the Acts of 1910, contains and re-enacts the same invalid provisions as were declared void in *Rice's case,* the Court below, was right in sustaining the demurrer to these two counts, and declaring Chapter 444 of the Acts of 1910 to be invalid and inoperative.

By section 7, Chapter 160 of the Acts of 1902, it is provided, that all persons, firms and corporations, and their assistants and employees, as therein provided, engaged in the business of undertaking at the time of the passage of the Act, shall register with said board on or before the first day of July following.

Section 8 provides that before any person, co-partnership or corporation should, after the passage of the Act, engage in the business of undertaking, and before any member of any such co-partnership, assistant or employee of any such person, co-partnership or corporation, or officer of such corporation whose duties would engage him or her in the care, preparation, disposition or burial of the dead, should discharge the duties of such business, employment or office; and before any of those named in the preceding section (section seven) who were engaged in the said business or employment at the time of the passage of the Act and who failed to register within the time named in the last preceding section, should

continue in said business, they should apply to the Board of Undertakers for a license to practice such business and employment; and should the board find, upon examination, that the applicant is of good moral character, possessed of skill and knowledge of such business and has a reasonable knowledge of sanitation, preservation of the dead, disinfecting the bodies of deceased persons, apartments, clothing and bedding, in case of death resulting from infectious or contagious diseases, the board should issue to said applicant, upon the payment of a fee of twenty dollars, a license to practice the business of undertaking. It also provided that licenses should issue to corporations when applied for, and that one license should suffice for all the members of a co-partnership when issued in the firm name.

Section 9 provides for the revocation of licenses.

Under section 10 all certificates issued under section 7 and all licenses issued under section 8 expired on the 30th day of April next ensuing the date of their issue, and thereafter before any person, co-partnership or corporation then engaged in the business of undertaking, or before any of the assistants, employees, or officers previously designated should continue in such business or employment, application should be made to the board for a license to carry on such business or to engage in the practice thereof, and upon the payment of a fee of five dollars a license similar to the one issued under section 8 should be issued by said board to such applicant.

The first count of the indictment charges, that the traverser did on the 2nd day of December, 1912, unlawfully engage in the business of undertaking in the City of Baltimore without first having registered as required by law, and without having obtained a license to practice the business of undertaking in Baltimore City, as provided by law.

The second count charges that William Keller, the traverser, being then and there an assistant and employee of a certain person then and there engaged in the business of undertaking, to wit, one William Cook, and as such assistant and employee, being then and there a person whose duties

engaged him in the care, preparation, disposition and burial of the dead, unlawfully did then and there engage in the business of undertaking without first having registered with the Secretary of the State Board of Undertakers of Maryland, as required by law, and without first having applied for and obtained from the State Board of Undertakers of Maryland a license to practice the business of undertaking in the State of Maryland.

The third and fourth counts charge a violation of Chapter 160 of the Acts of 1902, and it will be seen, they fully and clearly state the offence as described by the statute and need not be set out, in the opinion.

The demurrer and pleas cover over six pages of the record, but as they present the same question, namely, whether Chapter 160 of the Acts of 1902 is a valid and constitutional exercise of legislative power, they will be considered together.

The real objections to the Act appears to be:

First: Because it creates arbitrary and unreasonable classifications, in that it provides:

(*a*) That one license shall suffice for all the members of a co-partnership when issued in the firm name;

(*b*) That assistants and employees of undertakers shall pay the same license fee, and have the same skill and knowledge as the undertakers employing them.

(*c*) That licenses shall be issued without charge to corporations upon application.

Second: Because its provisions are uncertain and cover occupations outside of the sphere of the police power.

Many of the objections and questions presented in this case are really concluded by cases recently decided by this Court.

In *Shehan* v. *Tanenbaum Son & Co.,* 121 Md. 286, this Court held, that it was competent for the Legislature, to provide that no license shall be issued to permit more than one person or the members of a bona fide co-partnership to act thereunder, in reference to an insurance brokers license. It was also held, that corporations were not included in the use of the word person, as mentioned in that statute.

JUDGE CONSTABLE, in dealing with this question, said: "The Legislature seems to have wanted to make clear that although they extended the privilege of the license to the members of a bona fide co-partnership they nevertheless intended, when issued to a person, its use was restricted to the use of one person. Corporations necessarily conduct their business through officers and agents. We do not think because the privilege is extended to the members of a co-partnership to do business on one license that it is open to the same criticism, for the Act limits its use to the members of a bona fide co-partnership," * * * and * * * "the use of the license would be confined to the individual members."

The contention upon the part of the appellant, that the Act in question, is unconstitutional because it creates arbitrary and unreasonable classifications, will be seen, upon an examination of the Act, to be without force.

There is no discrimination as between those embraced within a class, and the regulations of the statute operate alike upon all persons and property, under the same circumstances and conditions.

As stated by the learned Attorney-General in his brief, the Act provides for one class embracing corporations, one class embracing partnerships, one class embracing individuals engaged in business for themselves, and one class embracing assistants and helpers.

It is true that under the provisions of the Act, a corporation pays nothing for a license and that one license suffices for a co-partnership, provided it is issued in the firm name, while every individual in order to secure a license must pay the sum of $20.00. Every individual, however, is on a footing of equality, and the opportunity to form a corporation or a co-partnership is open to all. There is, therefore, no discrimination that can fairly be said to be unreasonable or unfair.

In order to secure a license, the same requirements as to knowledge, character and experience are enforced in the

o

case of each and every applicant, without any exception
or qualification whatsoever, irrespective of whether the appli-
cant is an officer or employee of a corporation, a member of
a co-partnership or an employee thereof, or an individual in
business for himself or an employee of such individual.

The classification provided, by the statute in question, we
think, is based upon reasonable grounds, and is founded upon
the right of the State, in the exercise of its police power; to
regulate and protect the health and general welfare of the
community.

In *Clark* v. *Harford Agricultural and Breeders Associa-
tion,* 118 Md. 608, we said, the Legislature may under cer-
tain conditions, create classes and subject all persons coming
within the classification to burdens and duties not imposed
upon individuals outside the classes.

This general proposition of law is so well settled that we
need only cite a few of the many cases in support of it:
*Luman* v. *Hilchens Bros.,* 90 Md. 25; *Cochran* v. *Preston,*
108 Md. 227; *Long* v. *State,* 74 Md. 571.

In *Singer* v. *State,* 72 Md. 464, Judge Robinson in deal-
ing with an Act relating to the business of plumbing, said in
considering the power of the Legislature to impose restraints
upon all persons engaged in certain pursuits, the Supreme
Court says: "The nature and extent of the qualifications
required must depend primarily upon the judgment of the
State as to their necessity. If they are appropriate to the
calling or profession and attainable by reasonable application,
no objection to their validity can be raised." *Dent* v. *West
Virginia,* 129 U. S. 114; *Storck* v. *Balto. City,* 101 Md. 484;
*Barbier* v. *Connolly,* 113 U. S. 31.

The objections to the eighth section of the Act were dis-
posed of by this Court on the former appeal *State* v. *Rice,*
115 Md. 327, where we held, that the regulations of the Act
were proper under the police power of the State. Judge
Pattison, in disposing of the question said: "The require-
ments that the applicant for a license shall be possessed of

skill and knowledge in undertaking as well as a reasonable knowledge of sanitation, preservation of the dead, disinfecting the bodies of deceased persons, apartments, clothing and bedding in case of death resulting from infectious and contagious disease, are all within the proper exercise of the police power because of their relation to public health."

The case of *People* v. *Ringe*, 197 N. Y. 143, was cited with approval, and as it is in point, we quote it here: "Power and authority exist in the Legislature to license and regulate certain vocations notwithstanding provisions of the Federal and State Constitutions, but such power and authority are dependent upon a reasonable necessity for its exercise to protect the health, morals or general welfare of the State. The care of dead human bodies and the disposition of them by burial or otherwise is so closely related to the health and general welfare of a community that the business of caring for and disposing of such bodies may be regulated by license and special regulations under the general police power of the State. The danger that may arise from the body of a person who has died from some infectious, contagious and communicable disease or otherwise, is to some extent obviated by the sanitary regulations of local boards of health; but such regulations are quite inadequate to protect the health and general welfare of a community unless the person who comes into immediate contact with the dead body and upon whose care and skill the public are principally dependent in preventing the spread of infection or contagion and protecting the health, good order and general welfare of a community, is selected with special reference to his skill, knowledge and experience."

Under the statute now before us, and as it now stands, a person is not required in order to secure a license, to qualify as an embalmer. The test relates to knowledge of undertaking, of sanitation, preservation of the dead, and disinfecting the bodies of deceased persons, apartments, clothing and bedding in case of death resulting from infectious or contagious disease.

There can be no doubt, we think, that such requirements bear a close and reasonable relation to the public welfare, and to the preservation of public health. They are in themselves fair and reasonable and impose no restraint which may not be complied with by reasonable experience, and does not violate in any sense the constitutional rights of the traverser.

We have examined the case, with some care, and find that Chapter 160 of the Acts of 1902 is free from the objections urged against it, and as the Act is but the ordinary exercise of the police power of the State the judgment of the Court below will be affirmed.

*Judgment affirmed, with costs.*

---

*Overruling motion for re-argument.*

BRISCOE, J., delivered the opinion of the Court.

Since the filing of the opinion in this case, on the 25th of February, 1914, a petition or motion has been submitted on behalf of the appellant for a re-hearing and re-argument.

The case was submitted on the 8th of December, 1913, of the October Term, without oral argument upon full briefs filed on behalf of the State and on the part of the traverser.

In the opinion that was filed, we passed upon such of the pleadings as were necessary, and held the Act of 1902, Chapter 160, to be valid and free from the constitutional objections urged against it. The judgment of the Court below was affirmed.

It is now contended upon the part of the appellant and urged as reasons for a re-argument, first, that the affirmance of the rulings of the Court below, in sustaining the State's demurrer to the first and second special pleas "virtually reverses the decision of this Court in *State v. Rice,* 115 Md. 317," and secondly, the affirmance of the rulings on the

third, fourth, fifth, sixth, seventh, eighth and ninth special
pleas, in effect, holds "that the particular acts enumerated
in these pleas, constituted such acts, as are within the letter
and spirit of the law," and that the several persons or em-
ployees of a licensed undertaker named in these pleas would
be required to license under the Act of 1902, Chapter 160.

It will be seen that the traverser pleaded to the indict-
ment nine special pleas. The State demurred, and the Court
sustained its demurrer to each plea. The single question
here presented is whether these special pleas, as pleaded, were
good pleas to the indictment, and, even if the facts set forth
in them would have been a good defence, were they properly
pleaded? The first plea was to each count of the indictment,
and is as follows:

"(1) That the defendant is an employee of the said
William Cook mentioned in the indictment, the said
William Cook being a person engaged in the business
of undertaking in Baltimore City and having a license
from the State Board of Undertakers to engage in said
undertaking business; that the defendant is a skilled
embalmer, and as an employee of said William Cook,
is engaged solely in embalming bodies for burial;
that the defendant, during all the time mentioned in
each count of the indictment, has performed no other
acts connected with the business of undertaking except
the said acts of embalming bodies as an employee of
the said William Cook as aforesaid.

"The defendant further says, that undertaking and
embalming are performed frequently by the same
establishment, but that the business of undertaking is
a separate and distinct business from the business of
embalming. That an embalmer's duties require him
to know the art of preserving the dead body both by
arterial and cavity treatment; that he must generally
be thoroughly familiar with anatomy, with the action
of embalming fluids upon a body, and that the em-
balming business as such has nothing whatever to do
with the conducting or managing of funerals. That

an undertaker in order to be competent and qualified
in the undertaking business, must have the following
knowledge and be able to perform the following, being,
among other things, the duties of an undertaker:

"He should be able to sell a casket, to trim a casket,
put in the inner lining and put the handles on. He
should have a knowledge of all kinds of men and wom-
en's various suits and dresses; where to purchase them
and how to sell them and how to place them on a corpse.
He should be able to place the corpse in a casket and
close it up after the service is over. He should have
a knowledge of measuring of bodies of the dead and
fumigating the room in which the persons died. He
should also know where all the cemeteries are located,
in or near the city, and where all the steamboat and
railroad stations in said city are located, and should
also know how to purchase a ticket for a corpse. He
should see that the body is placed on a train or boat
in time for shipment. He should also know how to
arrange for a funeral in a Catholic or Protestant
church. He should have a knowledge of the Health
Department rules regarding the removal of a body
from a hospital or from house to house. He must be
able to act as agent of the family in seeing the doctor
for a certificate and notifying the cemetery to have the
grave ready in time for the funeral. He should know
the prices of carriages and hearses for funerals on
week-days and Sundays, also for country funerals. He
should notify the minister to serve at the funeral and
he should see that the box is taken to the cemetery in
time to have the grave dug. He should be able to con-
duct a funeral, such as to go to the house of the dead,
set up chairs enough to seat the people; see that the
hearse and carriages are in time and outside of the
door to carry the people to the cemetery; indicate the
appropriate time to begin the funeral services; after
the services, instruct the pallbearers to carry out the
body to the hearse; read the names from the list fur-
nished by the family and load each carriage properly;

sit in the pallbearers' carriage, or in a buggy half a block ahead of the hearse, and lead the funeral party to the cemetery. After arriving at the cemetery, deliver the body over to the cemetery officials, and remain to see that the body is lowered in the grave and the mourners are safely placed in their carriage to return home."

Each of the remaining eight pleas were to each count of the indictment, and each plea concluded as follows:

"And the defendant further says that the duties of a person engaged in the business of undertaking and those of an embalmer are as heretofore set out in the first plea, which statement of duties as therein set forth is made part hereof as fully as if set forth herein at length."

The Court below sustained the State's demurrer to these pleas and held the pleas to be bad and defective, and in this conclusion we concurred.

In *Moses* v. *Allen,* 91 Md. 50, it is said that the plea in the form in which it was tendered was prolix and argumentative. It could not have been traversed except by a replication of like faulty character and the demurrer to it was properly sustained.

In *Fox* v. *State,* 89 Md. 388, a somewhat similar state of pleadings was presented, and this Court said: "We need say but little in regard to the question presented by the demurrer. For the reasons already given, the facts set forth in the special pleas would have afforded a good defense to the first and second counts, if they had been properly pleaded. But the special plea was pleaded to each count, and therefore to the whole of each count and to the whole of the indictment. But, clearly, as we have already pointed out in discussing the question as presented by the exception to testimony, the facts set forth in the plea do not answer, as the plea professes to do, the whole indictment, nor even the whole of the third count. For this reason the plea is defective. But in addition to this objection the plea amounts to the general issue and is bad for this reason also." It was

held that the demurrer to the special pleas were properly sustained by the Court below. There were eight pleas filed in *Fox's case.*

The weight of authority in this and other jurisdictions seems to be conclusive in support of the proposition stated in *Fox* v. *State, supra*—12 *Cyc.* 363; *Moses* v. *Allen,* 91 Md. 50; *Spencer* v. *Patton,* 84 Md. 414; 16 *Enc. of Plead. and Practice,* 549; *Lake* v. *Thomas,* 84 Md. 622; *Hagerstown* v. *Klotz,* 93 Md. 438.

*Mr. Chitty,* in his work on pleading, 1 *Chitty,* 236, says that pleadings must not be insensible or repugnant, nor ambiguous or doubtful in meaning, nor argumentative, nor in the alternative—*Archbold, P. and E., in Criminal Cases,* 49; 1 *Poe, P. and P.,* sec. 549; *Gott* v. *State,* 44 Md. 341; *Mitchell* v. *Williamson,* 6 Md. 210; *Gardiner* v. *Miles,* 5 Gill, 100; 2 *Bouvier's Law Dictionary,* 678.

The nine special pleas filed in this case by the traverser were therefore bad, defective and clearly demurrable for the reasons stated, and need not be further discussed.

The special plea of *auterfois acquit,* called by the appellant in his brief "a plea in the nature of a plea in abatement," and in his petition as "a plea in the nature of former jeopardy," was, on its face, so clearly without merit that we did not deem it necessary for the purposes of the case to discuss it, but affirmed the ruling of the Court sustaining the demurrer to it.

The plea is set out in the record, and shows on its face that "the name of the deceased and the date of the offense" in the indictment on the former trial were entirely different from those in the present indictment, consequently they were clearly different and not the same offenses. In the brief filed by the appellant, in dealing with this plea, it is said:

"Before filing the nine special pleas to the indictment, the defendant interposed a plea in the nature of a plea in abatement (Record, p. 10), putting upon the record the fact that he had been previously arraigned under an indictment, identical in terms with the pres-

ent indictment, except as to the name of the deceased
and the date of the offense; that, after full argument
upon the defendant's demurrer to said original indict-
ment and each count thereof, the Criminal Court of
Baltimore (Gorter, J.) declared unconstitutional the
law on which said indictment was based, sustained
said demurrer to each count, and passed an order of
final judgment discharging the defendant without
day.

"Whatever may be the merits of such plea in tech-
nical law, it does seem, as a matter of principle and
practice, that a defendant ought not to be harassed by
a second indictment identical in terms with a prior
indictment which, after full and fair argument, has
been ruled insufficient and from which he has been
discharged without day. The State had its right to
appeal from the first judgment; failing to do so, it
was bound in equity to let the subject-matter thereof
rest as concluded by that judgment."

It is quite apparent, then, that under the defective special
pleas filed in this case we were not called upon to decide,
and we are not to be understood as deciding, that the statute
in question applies in terms to every employee or to the
various employees of an undertaker named in the special
pleas. No such conclusion can be drawn from the opinion
filed in the case. We regarded the validity of the Act as
the substantial question presented by the record and dis-
cussed in the briefs of the respective counsel, and so dealt
with the case.

In the brief filed by the learned Attorney-General on be-
half of the State it is said: "The State understands the
real contentions of the appellant to be that the Act of 1902,
Chapter 160, is unconstitutional and void." And the ap-
pellant, in his brief, relied upon the invalidity of the Act
as a bar to the prosecution under each plea. The pleas as
filed were practically disregarded by the appellee in its brief,
and only two were discussed or mentioned at all.

But, apart from the objections just considered, it is contended that the Court, by the opinion filed herein, "virtually reversed the decision in *Rice's case,* 115 Md. 317." In what respect it is difficult to see, as we relied upon that case, quoted extensively from it, and said: "Under the statute now before us, and as it now stands, a person is not required in order to secure a license to qualify as an embalmer. The test relates to knowledge of undertaking, of sanitation, preservation of the dead, and disinfecting the bodies of deceased persons, apartments, clothing and bedding in case of death resulting from infectious or contagious disease.

"There can be no doubt, we think, that such requirements bear a close and reasonable relation to the public welfare, and to the preservation of public health. They are in themselves fair and reasonable and impose no restraint which may not be complied with by reasonable experience, and does not violate in any sense the constitutional rights of the traverser."

As to the technical objection to the statement in the opinion, "that the demurrer and pleas present the same question, namely, whether the Acts of 1902, Chapter 160, is a valid and constitutional exercise of the legislative power and will be considered together," we need only say that the pleas were so treated by the appellant in his brief as raising the question of the validity of the law. And in his petition for a hearing, now before us, it is stated that the pleas were drawn so as to ascertain:

*a.* Whether the law by reason of its supposed many infirmities was valid at all;

*b.* If valid, what acts would constitute a violation of it;

*c.* If, under *Rice's case,* no license for embalming is required by one working on his own account, is a law valid if it requires one for the same work if performed by an employee of a licensed undertaker.

Finding no reason for granting the motion for a re-argument in this case, the motion will be overruled.

*Motion overruled, with costs.*