## BROOKS *v.* STATE BOARD OF FUNERAL DIRECTORS AND EMBALMERS OF MD.

[No. 32, September Term, 1963.]

100

*Motion for rehearing filed January 6, 1964, denied January 8, 1964.*
*Decided December 6, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*Richard C. Murray,* with whom were *Smith & Harrison* on the brief, for appellant.

*R. Randolph Victor, Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The State Board of Funeral Directors and Embalmers (the Board) on April 12, 1962, ordered the suspension of the license of the appellant, L. Scott Brooks as a funeral director, and the next day notified him that it was for one year. Brooks appealed to the Circuit Court for Baltimore County. That Court, in accordance with an oral opinion delivered after a hearing on January 31, 1963, entered an order on February 21, 1963, affirming the Board's order with a modification (assented to) making it specific that the suspension was for one year. This appeal is from that order. The initial appeal operated as a stay of the Board's order, and we are advised that it is still in effect pending this appeal.

The questions here presented arise out of the provisions of Section 360 of Article 43 of the 1957 Code which permit corporations previously licensed as funeral directors (in 1937 as to some, in 1945 as to others) to continue to engage in the "business or profession of funeral directing," sometimes referred to below as the "undertaking business," but which prohibit other corporations from doing so.

The appellant makes three contentions: first, that these provisions are invalid and unconstitutional because they bear no

substantial relationship to the public health, safety or welfare; second, that they are invalid because they discriminate between corporations engaged in the business before a certain date and corporations thereafter seeking to enter it; and third, that these provisions do not prevent a corporation from conducting the undertaking business through licensed individuals.

Article 43 of the Code is entitled "Health," and one subtitle thereof is headed "Funeral Directors and Embalmers." In the 1957 Edition this subtitle consisted of Sections 339-367, and (except as to changes in license fees not here material) remained in force up to June 1, 1962, when a rather general revision of the subtitle took effect. References herein to sections will be to sections of the 1957 Code unless otherwise stated.

Section 360 states that "the provisions of this sub-title shall not be construed as preventing the conducting [of] the business or profession of funeral directing by a corporation heretofore licensed," if it is registered with the Board and if it complies with such rules and regulations as the Board may prescribe. It prohibits such a corporation from operating any branch not in operation on June 1, 1945. It further states: "The Board shall not hereafter issue licenses to, nor register any corporation, nor shall any corporation be permitted to conduct the business or profession of funeral directing which has not already been licensed and registered." This section also contains a proviso derived from Ch. 741 of the Acts of 1945, permitting a corporation to be formed during World War II to take over and carry on (subject to stated conditions) the business of any person licensed as a funeral director or embalmer who may have been inducted into the armed forces of the United States during that war. Both the provision in favor of corporations "heretofore licensed" and the general prohibitions against new corporations originated in Ch. 503 of the Acts of 1937, and were carried forward in subsequent amendments of the statute. They are the major objects of attack here. From the time when the undertaking business first became the subject of statutory regulation (under Ch. 160 of the Acts of 1902) until the 1937 Act, corporations could obtain licenses as funeral directors.

The pertinent facts disclosed by the record may be briefly summarized. Mr. Brooks, the appellant, was duly licensed as an individual as a funeral director and also as an embalmer, holding a separate license for each of these occupations. In August, 1960 (not through his present counsel) he caused to be organized under the general corporation laws of Maryland a corporation known as Brooks Funeral Service, Inc., and on August 10th of that year he wrote the Board a letter requesting the issuance of a license to the corporation as a funeral director. He stated that he was aware of the statute against granting such a license, but contended that the statute was unconstitutional. The Board refused to license the corporation. About January 1, 1962, the corporation, nevertheless, started to carry on the business of a funeral director. Mr. Brooks is the sole stockholder and is an officer and director of the corporation. All of the employees of the corporation who are active in the conduct of its business (except a woman who does only cleaning or domestic work) are licensed as funeral directors or embalmers, or both. The Board found after a hearing on April 12, 1962, at which Mr. Brooks appeared as a witness and renewed his attack on the statute, that Mr. Brooks had operated the corporation, that it had engaged in the business of a funeral director without a license, and that Mr. Brooks had "purposely, knowingly, and deliberately operated" the corporation "for the purpose, among others of testing the validity of * * * Section 360 * * *." It concluded that, as a matter of law, Mr. Brooks had violated Section 360 and suspended his license pursuant to Section 352(2) (i).

We may comment first on what is stated as the appellant's third contention—that Section 360 does not prohibit a corporation from conducting an undertaking business through licensed individuals. We think that this argument is unsound because it simply ignores the flat prohibition contained in the statute against a corporation not already licensed and registered being "permitted to conduct the business or profession of funeral directing." In *Dvorine v. Castelberg Jewelry Corp.*, 170 Md. 661, 185 A. 562, it was held that a corporation which, as a part of its business, sold eyeglasses, was not engaged in the "practice of optometry," as defined by statute, when it em-

ployed a registered optometrist, compensated by a salary and by commissions to serve such patrons as the corporation might refer to him. At p. 673 of 170 Md., Judge Offutt said: "The question is, not whether the Legislature may prohibit a corporation or a lay natural person from furnishing service in a regulated employment through the agency of others, but whether it has done so in this statute, and a mere reading of the statute demonstrates that it has not." In the instant case, we think that a mere reading of the statute demonstrates that the Legislature has prohibited unlicensed corporations from obtaining a license and from conducting "the business or profession" of a funeral director without a license. The case of *State v. Kindy Optical Co.*, 216 Iowa 1157, 248 N. W. 332, distinguished in *Dvorine* seems directly in point here.

It is hardly necessary to add that our holding here does not apply in cases where a statute requires individuals to obtain a license, based upon skill, training or experience, or some combination thereof, in order to engage in some specified occupation and also permits corporations to engage in that occupation. In such instances, the employment by a corporation of duly licensed individuals by whom or under whose direction or supervision the work is to be done, seems not only proper, but necessary.[1]

This brings us to consideration of the appellant's contentions that the statute is void as a denial of due process and of the equal protection of the laws.

On the question of due process the appellant contends, among other things, that undertaking is essentially a business, rather than a profession, and he challenges the validity of any regulation of the business which prevents its being conducted in corporate form. We are inclined to agree with the appellant's contention that the occupation is a business, rather than a profession. It was referred to in our statutes, without ex-

---

1. Though not shown by the record in this case, a regulation of the Board (Art. IV A) filed pursuant to statute on June 2, 1953, with the Clerk of this Court states that "[a]ll funeral services and interments serviced by a corporation or a copartnership must be performed under direct supervision and in the presence of an individually licensed Funeral Director."

ception so far as we are advised, as a business from 1902 to 1937, and in Sections 345, 346 and 357 (1957 numbering) down to and including the 1957 Code. The amendment of Section 360 made by Ch. 503 of the Acts of 1937 introduced the phrase "business or profession" as applied to the occupation of a funeral director, but that same Chapter spoke consistently of the "profession" of embalmer. Nothing appears in the record in this case to show what, if any, changes had occurred in the nature of the occupation of a funeral director between 1902 and 1937 to bring about even the equivocal change then made in its characterization in Section 360. It was described by the statutes then involved and was treated by the Court as a business in *State v. Rice,* 115 Md. 317, 80 A. 1026 (1911), and in *Keller v. State,* 122 Md. 677, 90 A. 603 (1914) ; and it was so referred to in *Maryland State Funeral Directors Assn. v. State Board of Undertakers,* 150 Md. 294, 133 A. 62 (1926). See also *Grissom v. Van Orsdel,* 137 So. 2d 246 (Fla. App. 1962) ; *State v. Winneshiek Co-op Burial Assn.,* 237 Ia. 556, 22 N.W. 2d 800 (1946) ; and Jackson, *Law of Cadavers* (2d Ed.), p. 467. We note that Ch. 129 of the Acts of 1962, which revised most of the subtitle of Article 43 of the 1957 Code dealing with Funeral Directors and Embalmers purports to put funeral directing and embalming under a single license and speaks of the *"occupation* of funeral director and embalmer." (Italics supplied.) We shall, for the purposes of this case, but without undertaking to foreclose the question for the future when a more adequate record might be presented, regard the occupation of a funeral director as a business and not a profession. Accordingly, in our view, cases upholding the right of a legislature to bar corporations from the practice of a profession are not here applicable.

That undertaking be regarded as a business and not a profession does not of itself solve the problems presented by this case. The occupation is one which bears such a relation to public health as to make it appropriate for regulation through licensing. See the *Rice* and *Keller* cases above cited. See also *Walton v. Commonwealth,* 187 Va. 275, 46 S. E. 2d 373. Cf. *Pitts v. State Board of Examiners of Psychologists,* 222 Md. 224, 160 A. 2d 200. Requirements stated in Sec. 346 as to the

subjects upon which applicants for licenses are to be examined show that the business is concerned with matters affecting the public health. This section, after providing that applicants must meet certain requirements, including two years of practical experence as an apprentice, further provides that they "shall be examined as to the proper sanitation and disinfection of the clothing and bedding of persons dying from infectious or contagious diseases and the premises in which they shall have died; [and] as to the laws of this State and the local laws * * * relative to burials and burial permits and the proper care, preparation for burial or shipment of dead human bodies, * * * " [2]

It is evident, of course, that corporations as such could not be examined on the above matters and that corporations can act only through agents. Just why the statute does not of itself contain a requirement similar to that set forth in the Board's Regulation IV A quoted in footnote 1, above, that corporations licensed under the statute may act only through or under the direction of licensed individuals, is not clear.[3] However that may

2. Under Secs. 364 and 365 of Art. 43 of the 1957 Code (neither of which is amended or repealed by Ch. 129 of the Acts of 1962), the Board is authorized to maintain and operate a school for funeral directors and embalmers. Such authority goes back to Ch. 458 of the Acts of 1910 as to funeral directors and to Ch. 503 of the Acts of 1937 as to embalmers. The record does not disclose whether such a school has been established. The Maryland Manual, 1961-62, p. 148, describing the Board and its functions, makes no reference to any such school.

3. In *Keller v. State,* 122 Md. 677, 90 A. 603, where the main question was the validity of Ch. 160 of the Acts of 1902, an employee of a duly licensed undertaker whose duties involved the performance of acts covered by that statute was held guilty of violating the statute, notwithstanding the fact that his employer was licensed. Both the applicability of the *Keller* holding itself and questions as to other employees subject to the statute there left open (122 Md. at 691) have been greatly affected by subsequent legislation. See the following Acts: 1924, Ch. 575; 1935, Ch. 565; 1937, Ch. 503; 1939, Ch. 609; 1962, Ch. 129. For the provisions of these Acts setting forth exemptions from licensing requirements under the 1957 Code, Art. 43, see Sec. 346 as to funeral directors and Sec. 357 as to embalmers. Both are treated together under Sec. 359 of Art. 43 as enacted by Ch. 129 of the Acts of 1962. (See Code, 1963 Cum. Supp.).

be, in the instant case there is no attack upon the validity of a license issued to any corporation. Thus, whether the statute here involved might be open to objection because of the lack of a requirement that a licensed corporation act only through a licensed individual, and whether, if it would otherwise be open to such objection, the objection would be cured by the Regulation, are questions which are not before us.

The present case arises upon the suspension of the appellant's license as a funeral director, and his corporation is not itself a party to the case. The right or rights which the appellant claims here are seemingly partly individual and partly corporate. He claims as an individual the right to engage in the undertaking business through a corporation, and he also seems to seek to assert the right of his corporation to engage in it. The rights of an individual to engage in a lawful business are entitled to protection under the due process and equal protection clauses of the Fourteenth Amendment and by the due process clause, Art. 23, of the State Declaration of Rights. See such cases as *Dasch v. Jackson,* 170 Md. 251, 183 A. 534 (regulation and licensing of paperhangers only in Baltimore City held invalid), and *Schneider v. Duer,* 170 Md. 326, 184 A. 914 (unreasonable provisions in Act for the regulation and licensing of barbers held to deny due process). Of course, many regulatory and licensing statutes are upheld as valid exercises of the police power, and a number of authorities upholding such regulations are collected and reviewed in the *Dasch* case, 170 Md., at 263-266, as well as some cases in which regulations were held invalid. Our most recent case touching upon licensing concerns architects. *Snodgrass v. Immler,* 232 Md. 416, 194 A. 2d 103.

Among the cases cited in *Dasch* as upholding the existence of power to regulate and license various occupations were *Keller v. State,* and *Maryland State Funeral Directors Assn. v. State Board of Undertakers,* both cited above and both dealing with undertaking. In the *Funeral Directors* case, the validity of statutes providing for the regulation and licensing of persons engaged "in the business of undertaking and in the profession of embalming" was assumed. The object there sought by the

appellant was the revocation of licenses issued by the Board to an allegedly unqualified person.

It is also well established and is not disputed that corporations are entitled to protection under the Due Process and Equal Protection Clauses of the Fourteenth Amendment and under Article 23 of the Declaration of Rights. See, for example, among the cases in this Court which might be cited in this connection, *Board of Regents of University of Maryland v. Trustees of Endowment Fund of University of Maryland*, 206 Md. 559, 112 A. 2d 678, and *Luman v. Hitchens Bros. Co.*, 90 Md. 14, 44 A. 1051. There may be, however, some important differences between corporations and individuals as to whether rights which an individual may have, actually have been or may be acquired by corporations. A non-existent corporate right could scarcely receive constitutional protection.

The right of individuals to form a corporation to carry on a business is not so extensive as to authorize the formation of corporations for purposes contrary to a statute. *Fletcher on Corporations* (Perm. Ed.), Vol. 1, Sec. 93. Cf. *Terwilliger v. Graceland Memorial Park Assn.*, 35 N. J. 259, 173 A. 2d 33; *Braeburn Securities Corp. v. Smith*, 15 Ill. 2d 55, 153 N. E. 2d 806. Our General Corporation Law (Code (1957), Art. 23, Sec. 3) provides that corporations (with exceptions not here relevant) may be formed under Art. 23 for any one or more lawful purposes. The charter of Brooks Funeral Service, Inc. is not in the record, but it does appear from the record that it was conducting the business of a funeral director, notwithstanding the prohibition contained in Sec. 360 of Art. 43 against corporations formed after 1937 doing so. If, as we think it reasonable to suppose, a purpose stated in the charter of the Brooks corporation was to conduct the business of funeral director, it is difficult to see how, in the face of Sec. 360 of Art. 43, this could qualify as a "lawful purpose," if Sec. 360 is valid. It follows, we think, that any right of the appellant as an individual to form or cause to be formed a corporation to conduct the business of a funeral director can be established only if that prohibition is for some reason invalid. There is authority that neither the persons who elect to form a new corporation under the existing statutes of a state nor the corpora-

tion formed by them, at least insofar as the new corporation is concerned, may challenge the constitutionality of existing statutes of the state applicable to the new corporation at the time of its formation. See *Grand Rapids & Indiana Ry. Co. v. Osborn*, 193 U. S. 17; *People ex rel. Schurz v. Cook*, 148 U. S. 397; 13 Am. Jur., *Corporations*, § 1151. This is a case of a statutory prohibition against a corporation engaging in a specified business, not of an unconstitutional condition imposed upon a right granted by statute to engage in or conduct a business. Though the rule of the cases just cited might well be an effective bar to any claim by or on behalf of the corporation itself against the prohibition contained in Sec. 360, it may not necessarily be a bar to Mr. Brooks' attack based upon his asserted individual rights.

· The appellant relies heavily upon *Liggett Co. v. Baldridge*, 278 U. S. 105, *Dasch v. Jackson, supra,* and *Schneider v. Duer,* 170 Md. 326, 184 A. 914, to support his contention that the statutory prohibition against new corporations conducting the business of a funeral director and against granting them licenses so to do involve a denial of due process of law. None of these cases seems to us to be controlling here.

*Dasch v. Jackson, supra,* a licensing case, held invalid unreasonable statutory restrictions upon the right of an *individual* to engage in a lawful, common calling, that of a paperhanger. *Schneider v. Duer, supra,* was a similar case involving the trade of barbering. There was no controversy over the right of a corporation to engage in either the business of paperhanging or that of barbering in spite of a statute prohibiting a corporation from doing so, since no corporation was involved, nor, for that matter, was there any such statute, so far as appears. The right of individuals to work themselves at their respective callings was at issue; not their right to carry on their trades through corporations organized by them.

*Liggett v. Baldridge, supra,* held invalid, as a denial of due process of law, a Pennsylvania statute requiring that all stockholders in corporations owning drugstores be registered pharmacists. This statute contained an exception in favor of existing corporations authorized to do business in the state, which permitted them to continue to own and conduct drug stores or

pharmacies owned and conducted by them when the statute took effect, but they could not own and conduct new stores. The Liggett Co. had acquired and wished to operate new drug stores in the state and sought an injunction to prevent enforcement of the statute to keep it from doing so. The Supreme Court, with Justices Holmes and Brandeis dissenting, held the statute void as an undue restriction upon the Liggett Company's business, since the requirement as to ownership of stock bore no reasonable relation to the public health.

The *Liggett* case has never been expressly overruled, but it has been seriously limited, if not completely undermined. See *Daniel v. Family Security Life Ins. Co.,* 336 U. S. 220, in which the Supreme Court sustained a state statute forbidding undertakers to serve as agents for life insurance companies. In commenting on *Liggett,* the Court said (at pp. 224-25) : "We cannot say that South Carolina is not entitled to call the funeral insurance business an evil. Nor can we say that the statute has no relation to the elimination of those evils. There our inquiry must stop. * * * This rationale did not find expression in *Liggett v. Baldridge,* 278 U. S. 105, on which respondents rely. According to the majority in *Liggett,* 'a state cannot "under the guise of protecting the public, arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them." ' 278 U. S. at 113. But a pronounced shift of emphasis since the *Liggett* case has deprived the words 'unreasonable' and 'arbitrary' of the content for which respondents contend. See *Lincoln Federal Labor Union v. Northwestern Iron and Metal Co.,* 335 U. S. 525, where the cases are reviewed. * * * The *Liggett* case, however, was concerned with a statute far different from the one we are considering now. * * * Because the statute was directed at owners, who might have no connection with the pharmaceutical branches of modern drug stores, a divided Court thought the measure unreasonable. The Pennsylvania statute was clearly less adapted to the recognized evil than the provision now before us. The *Liggett* case, on its facts, is not authority for the invalidation of the South Carolina Mortuary Act."

The sweep of the *Liggett* case was already limited by the ac-

tion of the Supreme Court in *Peter H. Markmann Funeral Home, Inc. v. Ryan*, 300 U. S. 639. There the Supreme Court dismissed an appeal from a decision of the Supreme Court of Pennsylvania (reported sub. nom. *Rule et al. v. Price et al.*, 323 Pa. 139, 185 Atl. 851) sustaining as applied to a Delaware corporation a statute almost identical with the one involved in this case. In so doing, the Supreme Court cited *Crescent Oil Co. v. Mississippi*, 257 U. S. 129, 137, where the Court had sustained as applied to a foreign corporation already engaged in doing business within a state a statute prohibiting corporations interested in the manufacture of cotton seed oil from operating cotton gins. That statute, moreover, unlike those in *Liggett, Markmann*, and the instant case, did not contain a grandfather clause permanently protecting the interests of existing corporations.

In *Williamson v. Lee Optical Co.*, 348 U. S. 483, the Supreme Court upheld against challenge under the Due Process Clause of the Fourteenth Amendment a provision of a state statute making it unlawful for an optician to fit or duplicate lenses without a prescription from an opthalmologist or optometrist. "In practical effect, it means that no optician can fit old glasses into new frames or supply a lens * * * without a prescription." The Supreme Court stated that the statute might "exact a needless, wasteful requirement in many cases," but it thought that the legislature might have concluded that there were enough cases where a prescription was necessary to justify these statutory requirements as to both the fitting and replacement of glasses. At p. 488 the Court stated that "[i]t is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it."

Very recently, in *Ferguson v. Skrupa*, 372 U. S. 726, the Supreme Court unanimously sustained a Kansas statute which flatly prohibited the business of debt adjustment, except as an incident to the lawful practice of law. The opinion of the Court referred to its "abandonment of the use of the 'vague contours' of the Due Process Clause to nullify laws which a majority of the Court believed to be economically unwise * * *," and went on to say: "We refuse to sit as a 'superlegislature to weigh the

wisdom of legislation,' and we emphatically refuse to go back to the time when courts used the Due Process Clause 'to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought.' " The last interior quotation is from the *Williamson* case (348 U. S. at 488).

See also McCloskey, *Economic Due Process and the Supreme Court: An Exhumation and Reburial*, 1962 Sup. Ct. Rev. 34, which presents a comprehensive review of the subject.

The appellant also relies heavily upon the case of *Trinka Services v. State Board of Mortuary Science*, 40 N. J. Super. 238, 122 A. 2d 668, a decison by a single Judge of the New Jersey Superior Court. That case is directly in point and it supports the appellant's position. The court struck down a statute excluding corporations from the undertaking business as going beyond the proper exercise of the police power. The.court found that what it regarded as the technical side of the busi-- ness (as indicated below) was only a small part of the business of an undertaker, and concluded that "once the State and its Board of Mortuary Science have secured the health and welfare of the public in the usual sense, by its [the Board's, we infer] education, licensing and like provisions pertaining to the technical treatment of the human remains, * * * that * * * is as far as the State can go in regulating what is otherwise a private property right, i.e., the doing of business in the corporate frame."

The opinion makes no reference to the general principle of corporation law that corporations may have and exercise only such powers as the legislature confers upon them. See *Oregon Rwy. & Navigation Co. v. Oregonian Rwy. Co., Ltd.*, 130 U. S. 1, 20; *New Orleans Debenture Redemption Co. v. Louisiana*, 180 U. S. 320, 330-31; *Braeburn Securities Corp. v. Smith, supra*, 15 Ill. 2d at 65; *Fletcher, op. cit. supra*, Vol. 1, §§ 91, 113, and Vol. 6, § 2476. This is the only case which has come to our attention which seems to hold that individuals have the absolute right to organize a corporation to conduct any business which they might conduct as individuals without interference or limitation by the legislature except in the exercise of the police power of the state. In this respect we be-

lieve that the court's holding is not supported by authority generally, and we do not believe that either the Federal or the State Constitution so restricts the power of the General Assembly of this State. Sec. 48 of Art. 3 of our Constitution provides that corporations may be formed under general laws and prohibits incorporation by special acts when general laws are available. This certainly does not say that the General Assembly must permit corporations to be formed to carry on any and every kind of business open to individuals, unless their formation for any of such purposes may be prevented by an exercise of the police power. We are accordingly unable to accept for this State the sweeping premise upon which the decision of the New Jersey Superior Court seems to rest. Nor are we aware of any rule of law which would bar the legislature from amending the law as to the purposes for which corporations may be formed.

Even if we were to accept the premise of the *Trinka* case, we think that the appellant has failed to show that the exclusion of corporations from the business of funeral directors is not a valid exercise of the police power. That the burden rests upon him to do so hardly needs the citation of authority. Among comparatively recent cases so holding, see the *Pitts* case, *supra,* and *Barton v. Public Service Comm.,* 214 Md. 359, 135 A. 2d 442. The wisdom of such legislation is for the legislature to determine. Our concern is only with its power to adopt it. We think that the legislature can, for the protection of the public health, require that the business of undertaking be conducted only by individuals possessing the qualifications, skills and knowledge specified by Sec. 346. It could accomplish this result in either of these two ways: one by limiting the conducting of the business to such individuals, and the other by permitting not only individuals but also corporations to engage in the business, provided that the actual operations of corporations are carried on by or under the direction of duly licensed individuals. We do not think that the legislature was bound to adopt the second method or, if it had once been adopted, to adhere to it for corporations formed after the legislature determined to abandon it. It may be that the legislature thought that individual responsibility in this field would be promoted

by restricting the conduct of the business to individuals or partnerships of which they are members. See *Williamson v. Lee Optical Co., supra.*

The above views relate to the power of the legislature to exclude corporations entirely from conducting the business of funeral directors. This brings us to the question of unreasonableness of the statutory regulation and of discrimination arising from the fact that pre-1937 and World War II servicemen's corporations are permitted to conduct the business.

Not every difference amounts to an arbitrary or invidious discrimination. In *Williamson v. Lee Optical Co., supra,* 348 U. S. 483, 488-89, the Supreme Court upheld as against an attack under the Equal Protection Clause of the Fourteenth Amendment a state statute which subjected opticians to a regulatory system, but exempted all sellers of ready-to-wear glasses. The Court said (p. 489) : "The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. *Tigner v. Texas,* 310 U. S. 141. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. *Semler v. Dental Examiners,* 294 U.S. 608. The legislature may select one phase of one field and apply a remedy there, neglecting the others. *A. F. of L. v. American Sash Co.,* 335 U. S. 538. The prohibition of the Equal Protection Clause goes no further than the invidious discrimination."

It may at first blush seem strange that the legislature permits some corporations to conduct the business of a funeral director, but refuses to permit others to do so. One of the two kinds of corporations which are permitted under Sec. 360 is established under a grandfather clause; the other was designed to preserve the assets and going concern value of the business of men engaged in the service of the country during war. The exceptions in favor of each of these types of corporations had the purpose of preserving existing investments or values. We are of the opinion that this purpose is sufficient to sustain their separate classification. Cf. *Clark v. Harford Agricultural & Breeders' Assn.,* 118 Md. 608, 85 A. 503, upholding a statute

limiting the types of corporations or associations which might be licensed to conduct horse races in Harford County.

There is nothing new about grandfather clauses. They have been recognized in this State in many enactments, as for example in the Barbers' Act involved in *State v. Tag,* 100 Md. 588, 60 A. 465, and in *Criswell v. State,* 126 Md. 103, 94 A. 549, in the original and all subsequent acts relating to undertakers and embalmers, in the statute providing for the licensing of physicians respectively involved in *Manger v. Board of State Medical Examiners,* 90 Md. 659, 45 A. 891, and in *Watson v. State,* 105 Md. 650, 66 A. 635, affd. *Watson v. Maryland,* 218 U. S. 173, and in the public utility field, as in *Germenko v. Public Service Comm.,* 226 Md. 295, 173 A. 2d 362.

They have been upheld by the Supreme Court in not only the *Watson* case, but in others, among them *Stanley v. Public Utilities Comm.,* 295 U. S. 76, involving state regulation of motor carriers. Cf. *U. S. v. Carolina Carriers Corp.,* 315 U. S. 475, which arose under the federal Motor Carrier Act of 1935. It has struck down a state statutory provision favoring existing milk dealers, the actual effect of which was to exclude completely other persons and corporations from entering the business of a milk dealer in New York City during the life of the statute. *Mayflower Farms, Inc. v. Ten Eyck,* 297 U. S. 266. Likewise, in *Morey v. Doud,* 354 U. S. 457, it held invalid a state statute requiring generally the licensing of firms selling money orders, but exempting one company by name from its application.

The Supreme Court of California has had occasion to consider similar questions. In *Accounting Corp. of America v. State Board of Accountancy,* 34 Cal. 2d 186, 208 P. 2d 984, that court held a grandfather clause in a statute regulating the practice of accounting to be invalid, but stated that "[i]t is not intended to imply that the legislature is prevented from including in a class only those engaged in a pursuit on a given date, and making no provision for augmentation of the class, for 'The Legislature, in adopting a policy, may adapt legislation to an existing situation.'" In *People v. Western Fruit Growers,* 22 Cal. 2d 494, 140 P. 2d 13, the court sustained a

provision of the Agricultural Prorate Act which favored firms licensed at the time of its enactment and applied the statement above quoted that the legislature, in adopting a policy, may adapt legislation to an existing situation. In doing so, it cited cases exempting existing buildings from zoning ordinances and regulations governing the construction and operation of structures to be erected, the preferred position accorded to existing motor carriers, provisions permitting the continuance of licenses to persons licensed prior to the amendment of laws- amending vocational or professional standards, and laws continuing to treat established newspapers as newspapers of general circulation which met a prior statutory definition of the term.

The *Braeburn Securities* case above cited, decided by the Supreme Court of Illinois in 1958, deals with a similar problem involving bank holding corporations. There provisions according more favorable treatment to such corporations based upon their holdings of bank stocks as of a particular date than to other existing corporations and to new corporations were upheld. The analogy to non-conforming uses under zoning laws was emphasized.

As was held by the Supreme Court of the United States in *Sperry & Hutchinson Co. v. Rhodes,* 220 U. S. 502, 505, the Fourteenth Amendment does not prevent a statute or a statutory change from having a beginning and thus to discriminate between the rights of those of an earlier and those of a later time.

We may note that Sec. 360 denies to pre-existing corporations and to servicemen's corporations the right to establish branches, thus limiting competitive advantages as against individuals or partnerships which corporations might otherwise enjoy. No such restriction is, however, imposed on individuals or firms.

We think that the appellant has failed to demonstrate that the provisions in favor of existing corporations as of a past date and of corporations formed to carry on the business of persons serving in the armed forces during World War II constitute invidious discriminations. On the contrary, we deem the preservation of existing investments or values a sufficient basis to warrant separate classification and treatment.

Neither party has rested his or its position or contentions upon the amendments of the law relating to funeral directors and embalmers contained in Ch. 129 of the Acts of 1962. The appellant suggests in a footnote that the new statute, by providing for a single license for a funeral director and embalmer, is invalid under the *Keller* and *Rice* cases above cited. We do not express any opinion as to this suggestion nor as to the scope of the suspension—whether it applies to the occupation of embalming as well as to that of funeral directing—if the amended statute is valid. Under Code (1957), Art. 1, Sec. 3, any penalty imposed under the law as it existed prior to the above Act of 1962 would, we think, be preserved. This case comes to us as one imposing the penalty of suspension for violation of a licensing act. The validity of the charter of Mr. Brooks' corporation and the propriety of its issuance are not directly before us. We do not know why Mr. Brooks elected to proceed as he did rather than to institute a declaratory judgment proceeding, which would have involved little, if any, risk of suspension. The findings of the Board make it clear that one of his purposes was to test the validity of Sec. 360. We cannot undo Mr. Brooks' choice of method, and no question is before us as to either the reasonableness of the length of the suspension or the power of the Board to modify it, if it should see fit to do so.

In accordance with our views that Sec. 360 is not unconstitutional as a denial of due process of law under either the Federal or the State Constitution or as a denial of the equal protection of the laws, the order of the Circuit Court will be affirmed.

*Judgment affirmed; the appellant*
*to pay the costs.*